UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARLY NELSON and EILEEN HIRSCH, *individually, and on behalf of all others similarly situated,* ) ) ) ) Plaintiffs, ) ) v. ) ) JOHN PAUL MITCHELL SYSTEMS, ) ) Defendant. ) | Case No. 1:22-cv-06364<br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Karly Nelson and Eileen Hirsch ("Plaintiffs") allege that the "Invisiblewear Brunette Dry Shampoo" product (the "Product") manufactured by Defendant John Paul Mitchell Systems ("JPMS") contains benzene, a carcinogenic impurity that has been linked to leukemia and other cancers. As such, Plaintiffs filed a three-count class action complaint against JPMS for violations of state consumer fraud acts, the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, and unjust enrichment. Before the Court is JPMS's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons below, the Court grants the motion [33].

**Background**

The present case centers on the alleged presence of benzene in a cosmetic product. Benzene is a carcinogenic impurity that has been linked to leukemia and other cancers. (Dkt. 24, ¶ 1.) According to guidance from the United States Food and Drug Administration (FDA), if the use of benzene to produce a drug product is unavoidable, then the drug product may contain up to 2 parts per million (ppm) of benzene. (*Id.* at ¶ 15.) The FDA does not have a limit on the amount of benzene

that is permissible in cosmetic products such as the Product. But because dry shampoo products are not drugs, Plaintiffs argue that any level of benzene in such products "could be deemed unacceptable" by the FDA. (*Id.*)

JPMS manufactures, markets, and sells Paul Mitchell brand dry shampoo products, including the Product, throughout the state of Illinois and the United States. On October 31, 2022, Valisure, a company that operates an independent analytical laboratory, tested for the presence of benzene in various types of dry shampoo products from various brands, including the Product. (*Id.* at ¶ 12.) Through this testing, Valisure "detected high levels of benzene in specific batches of certain dry shampoo products." (*Id.* at ¶ 13.) Specifically, in their tests of three lots of the Product, Valisure found levels of benzene that ranged between 2.15 parts per million (ppm) to 35.2 ppm. (*Id.* at ¶ 14.)

In light of these test results, Valisure submitted a citizen petition to the FDA requesting that the agency "potentially include clarification that there is no acceptable level of benzene in cosmetic products," "establish a reasonable detection limit" for benzene in cosmetic products, and "issue a recall of identified batches and determine whether the identified products were 'misbranded' and 'adulterated' under the FDCA ["Food, Drug, and Cosmetic Act," 21 U.S.C. § 361(a), § 362(a)]." (Dkt. 34 at 3.) To date, the FDA has not issued a recall of the Product. "Recalls, Market Withdrawals, & Safety Alerts," U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts (last accessed Sep. 17, 2024).

Based on Valisure's report, Plaintiffs allege that JPMS committed two violations under ICFA. First, Plaintiffs allege that JPMS engaged in unfair conduct because the Product was "manufactured in such an insanitary way that it became contaminated with benzene" and because the ingredients section of the Product's label does not list benzene as an ingredient or include a warning on the possibility of the product containing benzene, in violation of the FDCA and the Illinois Food, Drug and Cosmetic Act (IL FDCA). (Dkt. 24, ¶¶ 24–25.) Second, Plaintiffs allege that because the

Product's label does not include benzene as an ingredient, JPMS engaged in deceptive conduct by misrepresenting and failing to disclose that the Product contained or was at risk of containing benzene. (*Id.* at ¶ 35.)

Plaintiff Nelson, a resident of Chicago, Illinois, alleges that she purchased the Product multiple times, most recently on January of 2022, at Walmart stores located in Chicago. (*Id.* at ¶ 38.) Plaintiff Hirsch, also a Chicago resident, alleges that over the past four years she has purchased at least one cannister of the Product from a SalonCentric store, also located in Chicago. (*Id.* at ¶ 39.) Neither allege that the Product they purchased was from the lots tested by Valisure. Had Plaintiffs known that the Product was or risked being adulterated and misbranded, Plaintiffs allege that they would not have purchased or used the Product at all, or would have paid significantly less for the Product.

Plaintiffs' complaint seeks equitable relief, damages, and restitution, for themselves and behalf of similarly situated Class Members, on three counts: violation of ICFA; unjust enrichment, and violations of the state consumer fraud acts of several states. JPMS now moves to dismiss.

**Legal Standard**

A Rule 12(b)(1) motion asserts that the federal district court lacks subject-matter jurisdiction over the claim, including that the adverse party lacks Article III standing to bring their claim. Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction bears the burden of establishing the elements necessary to show that the party has Article III standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021). "If the plaintiff lacks standing, the federal court lacks subject matter jurisdiction and the suit must be dismissed." *Int'l Union of Operating Eng'rs Loc. 139, AFL-CIO v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020).

A standing challenge "can take the form of a facial or a factual attack on the plaintiffs' allegations." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021). A facial attack "tests whether the allegations, taken as true, support an inference that the elements of

standing exist." *Id.* When a defendant has facially attacked standing, under Rule 12(b)(1), at the pleading stage, the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiffs must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**Discussion**

To establish standing under Article III, a plaintiff must show that she (1) suffered an injury-in-fact (2) that is traceable to the defendant's conduct and (3) and is redressable by judicial relief. *Cothron v. White Castle Sys., Inc.,* 20 F.4th 1156, 1160 (7th Cir. 2021) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431, 141 S. Ct. 2208, 2204, 210 L.Ed.2d 568 (2021).

To establish an injury-in-fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 194 L.ED. 2d 635 (2016). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way" and "concrete"

if it "encompass[es] harms that are "real, and not abstract." *Id.* Traditional tangible harms, such as physical and monetary injuries are the most obvious; "if a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC*, 594 U.S. at 425).

Here, Plaintiffs fail to allege factual content sufficient to show an injury-in-fact necessary for both damages and injunctive relief. To support their allegations, Plaintiffs point to the results of Valisure's test of the Product, which found benzene to be present in the three tested lots of the Product. Based on these results, Plaintiffs allege that because they would not have purchased the Product, or would have paid substantially less for the Product had they known that the Product contained or risked containing benzene, they suffered a financial injury.

To be clear, a financial injury is sufficiently concrete to create standing. In *In re Aqua Dots Products Liability Litigation*, the Seventh Circuit held that plaintiffs who had purchased a toy that was later found to be toxic to children had standing to challenge the adequacy of the defendant's recall program under relevant state and federal consumer-protection statutes even though their children had not been harmed and they had not sought a refund. 654 F.3d 748, 750 (7th Cir. 2011). Just because the plaintiffs "did not suffer physical injury," the Seventh Circuit reasoned, "does not mean that they were uninjured. The plaintiffs' loss [wa]s financial: they paid more for the toys than they would have, had they known of the risks the [toys] posed to children." *Id.* at 751.

But unlike in *In re Aquadots,* here, Plaintiffs' complaint fails to allege that their financial injury was concrete and particularized. In *In re Aquadots*, it had been established that the plaintiffs in fact purchased a product that was harmful—that is, that plaintiffs themselves were financially injured. Here, Plaintiffs do not allege that the Product that they purchased contained benzene. Instead, Plaintiffs argue that because Valisure's test of three lots of the Product revealed the presence of benzene, there is a risk that *all* the lots of the Product contained benzene, and therefore the Product

that they purchased did contain or likely contained benzene. These allegations support the reasonable inference that, assuming the results of Valisure's test are true and accurate, there is a general risk that some members of the public may have suffered a financial injury by purchasing the Product. But absent allegations that the Product they purchased was from one of the tested lots, these allegations are not particularized to show that Plaintiffs suffered more than an abstract risk of similar financial injury. For these reasons, Plaintiffs lack standing to seek damages for their claims.

Plaintiffs similarly lack standing to seek injunctive relief. To establish an injury-in-fact for injunctive relief, "a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495, 94 S. Ct. 669, 676, 38 L.Ed.2d 674 (1974). Since Plaintiffs are now aware that the Product allegedly contains benzene, there is no risk of future deception by JPMS. Therefore, Plaintiffs are not likely to be harmed by the Product in the future. *Id.*; *see also Hamidani v. Bimbo Bakehouse LLC*, No. 22-CV-01026, 2023 WL 167513 (N.D. Ill. Jan. 12, 2023) (Coleman, J.) ("[O]nce a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm."); *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 702 (N.D. Ill. 2020) (Seeger, J.) ("There is no risk of 'fool me twice,' so there is no basis for an injunction."). For these reasons, Plaintiffs lack standing to seek injunctive relief for their claims.

**Conclusion**

For these reasons, the Court grants JPMS's motion to dismiss under Rule 12(b)(1) for lack of standing without prejudice [33]. Plaintiffs are granted leave to amend their complaint within 14 days if they have a good faith basis for believing they can cure the pleading deficiencies identified in this

opinion. If Plaintiffs do not file their amended complaint within 14 days from the date of this Order, Plaintiffs' case will be dismissed with prejudice.

**IT IS SO ORDERED.**

Date: 9/23/2024

Entered: _____

SHARON JOHNSON COLEMAN
United States District Court Judge